# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| **JOSEPH SIEGELMAN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No.: 2:16-CV-00083-MHH** |
| | ) | |
| **UNITED STATES DEPARTMENT** | ) | |
| **OF JUSTICE, OFFICE OF** | ) | |
| **PROFESSIONAL** | ) | |
| **RESPONSIBILITY,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION

This case arises under the Freedom of Information Act. 5 U.S.C. § 552. Plaintiff Joseph Siegelman filed this action after the Department of Justice denied his administrative request for the production of the Office of Professional Responsibility's report of its investigation regarding the prosecution of former Alabama Governor Donald Siegelman.[1] Following the Court's *in camera* review of the report of investigation (commonly called an ROI), OPR produced the non-exempt portions of the ROI to Mr. Siegelman. (Doc. 27). The Court then dismissed Mr. Siegelman's complaint as moot because OPR produced the non-protected portions of the ROI. (Doc. 28, p. 2).

---

[1] For the sake of clarity in this opinion, the Court refers to plaintiff Joseph Siegelman as "Mr. Siegelman" and refers to former Governor Siegelman as "Governor Siegelman."

Mr. Siegelman has filed a motion for attorney fees and costs. He asserts that he may recover fees and costs because he is the prevailing party in this action. (Doc. 29). For the reasons discussed below, the Court grants Mr. Siegelman's motion and provides directions to the parties concerning the assessment of fees.

## I.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY[2]

OPR investigates allegations of DOJ attorney misconduct. (Doc. 15-2, pp. 2-3, ¶ 3). On June 12, 2015, Joseph Siegelman emailed OPR and requested the ROI concerning OPR's investigation of potential prosecutorial misconduct relating to the United States' prosecution of former Alabama Governor Siegelman. (Doc. 15-2, p. 19; Doc. 23, pp. 5-6). The ROI is 157 pages long. (Doc. 15-2, pp. 11-15). OPR responded to Mr. Siegelman on June 18, 2015. OPR stated that it would not release the ROI because the ROI was subject to FOIA exemptions 5, 6, and 7(C). (Doc. 15-2, pp. 21-23). OPR withheld the ROI in its entirety. (Doc. 15-2, p. 4, ¶ 7).

On July 14, 2015, Mr. Siegelman appealed OPR's decision to the DOJ's Office of Information Policy. (Doc. 15-2, p. 4, ¶ 8). On September 28, 2015, OIP affirmed OPR's decision "to withhold the ROI in its entirety pursuant to FOIA exemptions 5, 6, and 7(C)." (Doc. 15-2, p. 4, ¶ 10; *see also* Doc. 15-2, pp. 32-33).

---

[2] The Court's opinion resolving the parties' motions for summary judgment includes a full account of the circumstances surrounding Mr. Siegelman's request for the ROI. (Doc. 23, pp. 4-7). The Court includes in this opinion only the procedural history and facts relevant to Mr. Siegelman's motion for fees and costs.

Mr. Siegelman then filed this action. (Doc. 1). Mr. Siegelman and OPR filed cross motions for summary judgment. (Docs. 15, 17). In support of his motion for summary judgment, Mr. Siegelman offered a host of exhibits to support his argument that "bad faith by Defendant U.S. Department of Justice" entitled him to production of the ROI "or, at a minimum, *in camera* review [of the ROI] by the Court." (Doc. 18-2, p. 1). (*See* Docs. 18-2 through 18-40). In support of its motion for summary judgment, OPR filed the declaration of Ginae Barnett, a member of OPR. In the declaration, Ms. Barnett described the process for evaluating a FOIA request and OPR's initial position with respect to Mr. Siegelman's FOIA request and then provided "a line-by-line segregability analysis of the ROI." (Doc. 15-2, p. 17, ¶ 36). Based on the segregability analysis, OPR produced to Mr. Siegelman three pages from the ROI consisting of the title page and OPR's analytical framework. (Doc. 15-2, p. 17, ¶ 36).

The Court denied both parties' summary judgment motions but granted Mr. Siegelman's request for an *in camera* review of the ROI. (Doc. 23, p. 32). Based on its *in camera* review of the ROI, the Court identified 34 pages of the ROI that contain information that is not subject to FOIA exemptions. (Doc. 26, pp. 2-5). The Court ordered OPR to show cause why OPR should not redact exempt information from those 34 pages and produce the non-exempt information to Mr. Siegelman. (Doc. 26, p. 5). On February 23, 2018, OPR produced the redacted

pages of the ROI to Mr. Siegelman. (Doc. 27, p. 2). The Court then dismissed Mr. Siegelman's FOIA action as moot due to OPR's production of the redacted ROI. (Doc. 28).

Mr. Siegelman filed a motion for attorneys' fees and costs. (Doc. 29). In the motion, Mr. Siegelman maintains that initiating this litigation caused OPR to release "factual portions of the ROI [that] would have remained forever secret…." (Doc. 30, p. 5). In its opposition to Mr. Siegelman's fee motion, OPR argues that Mr. Siegelman is ineligible for fees under FOIA and that, even if he is eligible, he is not entitled to fees. (Doc. 32, pp. 10-19). OPR also asserts that the fee award Mr. Siegelman requests is unreasonable. (Doc. 32, pp. 20-31).

## II.    LEGAL STANDARD FOR FOIA ATTORNEYS' FEE CLAIMS

The fee-shifting provision of FOIA states that a "court may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under this section in which the complainant has substantially prevailed." 5 U.S.C. § 552(a)(4)(E)(i).

Courts use a two-part framework to determine whether an award of attorneys' fees and costs is appropriate. *Abernethy v. I.R.S.*, 909 F. Supp. 1562, 1567-68 (N.D. Ga. 1995), *aff'd*, 108 F.3d 343 (11th Cir. 1997); *Brayton v. Office of the U.S. Trade Representative*, 641 F.3d 521, 524 (D.C. Cir. 2011). First, a court must determine whether the FOIA complainant is "eligible" for a fee award.

To be eligible, the complainant must have "substantially prevailed" in the FOIA action.  5 U.S.C. § 552(a)(4)(E).  A complainant substantially prevails when he obtains relief via "(I) a judicial order, or an enforceable written agreement or consent decree; or (II) a voluntary or unilateral change in position by the agency, if the complainant's claim is not insubstantial."  5 U.S.C. § 552(a)(4)(E).

If a court determines that a claimant is eligible for an award of attorneys' fees, then the court must decide whether the claimant is entitled to such an award. *Lovell v. Alderete*, 630 F.2d 428, 431 (5th Cir. 1980) ("Once a plaintiff has substantially prevailed and thus become eligible for an award of attorney's fees, a court should determine whether the plaintiff is entitled to the award in light of [four] criteria . . .");[3] *Brayton*, 641 F.3d at 524 (if a court determines that a plaintiff "substantially prevailed," then "the court proceeds to the entitlement prong and considers a variety of factors to determine whether the plaintiff *should* receive fees.") (emphasis in *Brayton*) (citation omitted).  To determine whether a plaintiff is entitled to fees and costs under FOIA, a court considers four factors:  (1) the public benefit derived from the case; (2) the commercial benefit to the plaintiff; (3) the nature of the plaintiff's interest in the records; and (4) the reasonableness of the agency's withholding of the requested documents.  *Chilivis v. S.E.C.*, 673 F.2d

_____

[3] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit Court of Appeals adopted as binding precedent decisions that the Fifth Circuit Court of Appeals issued prior to October 1, 1981.

1205, 1212 n.16 (11th Cir. 1982); *Lovell*, 630 F.2d at 431-32. A court "may consider any relevant equitable factors that may affect its balancing" of the criteria, and a court must evaluate the criteria "in light of the fundamental legislative policies underlying" FOIA. *Lovell*, 630 F.2d at 431; *see Nix v. United States*, 572 F.2d 998, 1007 (4th Cir. 1978) ("[A]n award of attorney's fees is not automatic, but is to be made where doing so will encourage fulfillment of the purposes of FOIA.").

If a court determines that a party is both eligible and entitled to receive fees, then the party "must submit his fee bill to the court for its scrutiny of the reasonableness of (a) the number of hours expended and (b) the hourly fee claimed." *Long v. U.S. I.R.S.*, 932 F.2d 1309, 1313-14 (9th Cir. 1991); *Judicial Watch, Inc. v. U.S. Dep't of Commerce*, 470 F.3d 363 (D.C. Cir. 2006) (explaining that district courts retain the discretion to modify a fee award based on the reasonableness of the request and the particular facts of the case); *see also Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d 1292, 1303 (11th Cir. 1988) ("Occasionally, evidentiary hearings are necessary" when district courts evaluate the reasonableness of attorneys' fees.).[4] If the rate applied and total hours are reasonable in light of the difficulty of the case and the skill of the attorneys

---

[4] *Norman* involved a request for fees under § 1988. "The fee shifting provisions of section 1988 and FOIA are substantially similar," and "the two statutes should [not] be interpreted differently." *Ray v. U.S. Dep't of Justice*, 87 F.3d 1250, 1251 (11th Cir. 1996).

involved, then there is a "strong presumption" that the claimed fee "represents a reasonable award." *Long*, 932 F.2d at 1314. A district court awarding fees and costs "should provide a detailed account of how it arrive[d] at appropriate figures for the number of hours reasonably expended and a reasonable hourly rate." *Long*, 932 F.32d at 1314 (internal quotations omitted).

## III. ANALYSIS

### A. Eligibility

Mr. Siegelman asserts that he is eligible for an award of attorneys' fees because the Court conducted an *in camera* review and subsequently issued a show cause order that led OPR to release 34 redacted pages of the ROI. (Doc. 30, p. 5). OPR argues that Mr. Siegelman is not eligible for an award of attorney's fees because there is no court order constituting judicial relief, and the release of only 34 pages is insubstantial. (Doc. 32, pp. 10-11).

Although OPR correctly asserts that the Court did not unconditionally order the release of the 34 redacted pages of the ROI, OPR's argument is based on a snapshot taken from the claimant's protracted effort to obtain the ROI and this Court's orders relating to that effort. When Mr. Siegelman first requested the ROI in June of 2015, within one week, OPR notified Mr. Siegelman of its decision to withhold the ROI in its entirety. When Mr. Siegelman appealed OPR's decision administratively, OIP affirmed OPR's decision to withhold the ROI in its entirety

pursuant to three FOIA exemptions. After Mr. Siegelman filed this lawsuit, on July 26, 2016 (more than one year after Mr. Siegelman requested the ROI), OPR, having made "a line-by-line segregability analysis of the ROI," voluntarily produced to Mr. Siegelman three pages from the ROI consisting of the title page and OPR's analytical framework. After evaluating the declaration that OPR presented in support of its decision to release only three pages of the ROI, the Court likewise made a line-by-line segregability analysis of the ROI and issued a five-page order detailing the information in the ROI that was not subject to the exemptions on which OPR based its decision to withhold everything other than the title page and OPR's analytical framework. The Court ordered OPR "to SHOW CAUSE by February 23, 2018 why the portions of the report identified above are subject to the FOIA exemptions claimed and cannot be segregated and produced, or to produce those portions of the report to the plaintiff." (Doc. 26, p. 5). Nearly three years after Mr. Siegelman requested the ROI, OPR produced 34 redacted pages to Mr. Siegelman on February 23, 2018. (Doc. 26, p. 5; Doc. 27).

On this record, the absence of an unconditional order does not render Mr. Siegelman ineligible for an award of fees. In a decision on which the Court of Appeals relied in *Lovell*, the Circuit Court of Appeals for the District of Columbia explained:

> It is true that a court order compelling disclosure of information is not
> a condition precedent to an award of fees, *Foster v. Boorstin*, 182

8

U.S.App.D.C. 342, 344, 561 F.2d 340, 342 (1977); *Nationwide Building Maintenance, Inc. v. Sampson*, 182 U.S.App.D.C. 83, 87, 89, 559 F.2d 704, 708-10 (1977), but it is equally true that an allegedly prevailing complainant must assert something more than *Post hoc, ergo propter hoc*, *Vermont Low Income Advocacy Council, Inc. v. Usery*, 546 F.2d 509, 514 (2d Cir. 1976). Instead, the party seeking such fees in the absence of a court order must show that prosecution of the action could reasonably be regarded as necessary to obtain the information, *Vermont Low Income Advocacy Council, Inc. v. Usery, supra* at 513, and that a causal nexus exists between that action and the agency's surrender of the information, *Cuneo v. Rumsfeld, supra* 180 U.S.App.D.C. at 190, 553 F.2d at 1366. Whether a party has made such a showing in a particular case is a factual determination that is within the province of the district court to resolve. In making this determination, it is appropriate for the district court to consider, *Inter alia*, whether the agency, upon actual and reasonable notice of the request, made a good faith effort to search out material and to pass on whether it should be disclosed.

*Cox v. U.S. Dep't of Justice*, 601 F.2d 1, 6 (D.C. Cir. 1979).

In this case, Mr. Siegelman's prosecution of this action may reasonably be regarded as necessary to obtain the three pages of the ROI that OPR disclosed in 2016 and the 34 pages of the ROI that OPR produced in 2018. OPR, upon actual and reasonable notice of Mr. Siegelman's request for the report in 2015, withheld the report in its entirety, and OIP affirmed OPR's decision, all within a few months' time. It does not appear that OPR conducted a segregation analysis until the summary judgment stage in this litigation. Thus, this litigation caused OPR to make a good faith effort to search through the ROI and determine whether information in the ROI should be disclosed. *See Conservation Force v. Jewell*, 160 F. Supp. 3d 194, 205-06 (D.D.C. 2016) (explaining that claimants may recover

attorneys' fees when the government determines that the sought-after information could be released while preparing its motion for summary judgment months after closing the administrative review of the ROI or when the government "reversed course on previous exemption assertions" during the litigation). And this Court ordered OPR to produce information appearing on 34 pages of the ROI if OPR could not show good cause for withholding the information. OPR produced information from those 34 pages only after the Court issued a show cause order.

Thus, Mr. Siegelman substantially prevailed in this action per 5 U.S.C. § 552(a)(4)(E)(i). *See, e.g. Knuckles v. Dep't of the Army*, No. CV 115-077, 2016 WL 3947615 (S.D. Ga. July 19, 2016) (where agency produced information more than one year after claimant requested the information and four months after claimant filed suit, claimant substantially prevailed).[5]

---

[5] In 2007, Congress added 5 U.S.C. § 552(a)(4)(E)(ii) to the FOIA fee provision "'to prevent federal agencies from denying meritorious FOIA requests, only to voluntarily comply with a request ... to avoid liability for litigation costs.' *Warren v. Colvin*, 744 F.3d 841, 845 (2d Cir. 2014) (reversing the district court and finding a plaintiff entitled to costs where he filed a FOIA suit after a series of unsuccessful requests and the defendant voluntarily released the documents after the plaintiff initiated the suit)." *Knuckles*, 2016 WL 3947615 at *4. Even if OPR's change in position with respect to the 37 pages that OPR ultimately produced could be characterized as "voluntary or unilateral" under § 552(a)(4)(E)(ii), the Court still would find that Mr. Siegelman substantially prevailed because his claim is not insubstantial. As discussed in previous orders, the subject of the OPR investigation is a matter of public concern. "[T]he *degree* of the plaintiff's success in relation to the other goals of the lawsuit is a factor critical to the determination of the size of a reasonable fee, not to eligibility for a fee award at all." *Tex. St. Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 790 (1989) (emphasis in original).

## B. Entitlement

Because Mr. Siegelman is eligible for an award of fees and costs, the Court must consider whether he is entitled to an award of fees and costs based on the benefit to the public resulting from the FOIA request, the nature of the plaintiff's interest in the information, and the reasonableness of the Government's justifications for nondisclosure. In making this determination, the Court must be mindful of relevant equitable considerations and the legislative purpose of FOIA.

With respect to legislative purpose, as this Court previously has stated, FOIA is "a broad disclosure statute which evidences a 'strong public policy in favor of public access to information in the possession of federal agencies.'" *Cochran v. United States*, 770 F.2d 949, 954 (11th Cir. 1985) (quoting *Brown v. F.B.I.*, 658 F.2d 71, 73 (2d Cir. 1981)); *see also* 5 U.S.C. § 552(a). "However, 'Congress realized that legitimate governmental and private interests could be harmed by release of certain types of information,' . . . and provided for certain exceptions to the rule of broad disclosure." *News-Press v. United States Dep't of Homeland Sec.*, 489 F.3d 1173, 1191 (11th Cir. 2007) (quoting *F.B.I. v. Abramson*, 456 U.S. 615, 621 (1982)). Congress provided nine exemptions from disclosure in FOIA. 5 U.S.C. § 552(b).

The FOIA exemptions "are explicitly made exclusive . . . and must be narrowly construed." *Dep't of Air Force v. Rose*, 425 U.S. 352, 361 (1976)

(citations omitted). Additionally, the "exemptions do not obscure the basic policy that disclosure, not secrecy, is the dominant objective of [FOIA]." *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 7-8 (2001) (quoting *Rose*, 425 U.S. at 361). In keeping with FOIA's objective of broad disclosure, if a federal agency relies upon one of the nine statutory exemptions to withhold a record, then the agency should produce "any reasonably segregable portion" of the record after redacting the portions of the record that are subject to the exemption claimed. *Miccosukee Tribe of Indians of Fla. v. United States*, 516 F.3d 1235, 1257 (11th Cir. 2008) (quoting 5 U.S.C. § 552(b)).

With this legislative framework in mind, the Court evaluates whether Mr. Siegelman is entitled to an award of fees and costs.

### Benefit to the Public

When determining the extent to which the public benefits from a FOIA request, a court must "evaluate the specific documents at issue" and determine whether the plaintiff's lawsuit "is likely to add to the fund of information that citizens may use in making vital political choices." *Cotton v. Heyman*, 63 F.3d 1115, 1120 (D.C. Cir. 1995). A court must assess "the potential public value" of the information sought, not the "public value of the information received." *Davy v. C.I.A.*, 550 F.3d 1155, 1159-60 (D.C. Cir. 2008). A FOIA request may have potential public value even when "the released documents appear to reveal little."

12

*Morley v. C.I.A.*, 810 F.3d 841, 844 (D.C. Cir. 2016). "[T]he public-benefit factor requires an *ex ante* assessment of the potential public value of the information requested, with little or no regard to whether any documents supplied prove to advance the public interest." *Morley*, 810 F.3d at 844. "To have 'potential public value,' the request must have at least a modest probability of generating useful new information about a matter of public concern." *Morley*, 810 F.3d at 844. "The nature of the subject that the request seeks to illuminate is obviously important." *Morley*, 810 F.3d at 844 (quoting *Davy*, 550 F.3d at 1159). Where the subject of the FOIA request has garnered significant public attention and generated substantial public discussion, "showing potential public value is relatively easy." *Morley*, 810 F.3d at 844.

The subject of the ROI in this case is a Justice Department internal investigation of allegations that the United States' prosecution of Governor Siegelman was "selective and politically motivated." (Doc. 15-2, p. 3). Based on its investigation, the Department of Justice concluded that "some employees had exercised poor judgment with respect to discrete issues," but the Department "found that no employee had engaged in professional misconduct." (Doc. 15-2, p. 3). The ROI contains "factual findings, legal analysis, and recommendations" concerning the investigation. (Doc. 15-2, p. 2). The ROI contains some of the "e-mails, intra-agency letters, internal memoranda, and notes" that OPR gathered

during its investigation." (Doc. 15-2, p. 6). The ROI also includes "details of case strategy and other case and investigative details, all compiled in anticipation of" Governor Siegelman's prosecution. (Doc. 15-2, p. 7). "On June 3, 2010, DOJ provided to the U.S. House of Representatives Committee on the Judiciary a letter summarizing OPR's investigation in response to a request by the Committee." (Doc. 15-2, p. 16, ¶ 35). Given the subject of the ROI, the general description of the contents of the ROI, the evidence which Mr. Siegelman offered which demonstrates the public interest in the Siegelman prosecution, and the related Congressional investigation, it is "relatively easy" for Mr. Siegelman to demonstrate the "potential public value" of the FOIA request even though the released portions of the ROI may reveal little. *Morley*, 810 F.3d at 844. Accordingly, the "benefit to the public" factor supports a finding that Mr. Siegelman is entitled to an award of attorneys' fees.

<u>*Commercial Benefit and Nature of Mr. Siegelman's Interest*</u>

Courts often analyze the second factor, commercial benefit to the plaintiff, and the third factor, the nature of the plaintiff's interest in the records, together to determine whether the plaintiff has a "sufficient private incentive to seek disclosure of the documents without expecting to be compensated for it." *McKinley v. Fed. Hous. Fin. Agency*, 739 F.3d 707, 711 (D.C. Cir. 2014) (internal quotations and citation omitted). An award of fees is meant for claimants

"motivated by scholarly, journalistic, or public interest concerns." *All. for Responsible CFC Policy, Inc. v. Castle*, 631 F. Supp. 1469, 1471 (D.D.C. 1986).

There is no evidence that suggests that Mr. Siegelman has a private commercial interest in the ROI. OPR argues that that because Mr. Siegelman is Governor Siegelman's son, Mr. Siegelman's interest in the ROI is purely personal. (Doc. 32, pp. 15-17). The relationship between Mr. Siegelman and Governor Siegelman cannot be overlooked in this analysis. As OPR pointed out in its brief, in his opening brief urging the Court to order disclosure of the entire ROI, Mr. Siegelman stated that he sought the ROI "on behalf of his family." (Doc. 18-1, p. 2). In his brief in opposition to OPR's motion for summary judgment, Mr. Siegelman stated that Governor Siegelman "appears to have been wrongfully imprisoned," and information in the ROI could "provide strong basis for a 2255 motion." (Doc. 19, pp. 6-7). Mr. Siegelman stated that he had "a substantial need for the information because, without it, he cannot make a colorful claim for relief under § 2255, the only potential recourse remaining for Siegelman who will otherwise continue to remain wrongfully incarcerated." (Doc. 19, p. 7).

But there is more. Mr. Siegelman also argued that there was a strong public interest in disclosure of the ROI. That interest concerns the integrity of the federal criminal justice system. Mr. Siegelman posited: "To suggest this case involves no public interest would be to say there is no public interest in maintaining the right to

15

vote." (Doc. 19, p. 17). Mr. Siegelman quoted Senator Grassley's admonition

regarding the use of criminal prosecutions to influence public elections:

> While all criminal cases should be handled with the upmost of
> professionalism, cases of this level of importance and publicity, *where
> elections can be swayed*, should be shining examples of the best of the
> Justice Department.

(Doc. 19, p. 17) (quoting *Hearing on the Special Counsel's Report on the

Prosecution of Senator Ted Stevens: Hearings Before the United States Senate

Comm. on the Judiciary*, 112th Cong. (2012) (Mar. 28, 2012)) (emphasis in Doc.

19). Mr. Siegelman stated that the Department of Justice announced the

indictment of Governor Siegelman two months after Governor Siegelman

announced his candidacy for the 2006 Alabama gubernatorial race, and the

Siegelman trial took place one month before the Democratic primary election.

(Doc. 19, pp. 18-19). Mr. Siegelman asserted: "There is arguably no greater

public interest than free and fair elections, as it is the very essence of democracy."

(Doc. 19, p. 19); *see also* (Doc. 21).

Creating some ambiguity, Mr. Siegelman concluded his argument, stating:

"Through this FOIA action, plaintiff strives for clarity, not to free his father or as

some stalwart for his family, but to simply learn—on behalf of so many in this

state and beyond who want to know the truth and to see justice done in this case—

'what [ou]r Government is up to.'" (Doc. 19, p. 25). He continued: "The OPR

report offers plaintiff no hope of exonerating his father; the conviction of Don

Siegelman has been upheld by the Eleventh Circuit, and the Supreme Court has denied certiorari as to both the conviction of Don Siegelman itself as well as the sentence imposed." (Doc. 19, p. 25). In Mr. Siegelman's view, obtaining the factual portions of the ROI "would provide some closure to the people of Alabama, and of the United States" to help them determine "where the truth lies in this saga," and release of the report no doubt would provide the same opportunity for some closure to Mr. Siegelman and his family.

Thus, Mr. Siegelman's efforts seem to stem from mixed motives. He and his family certainly have a private interest in the ROI, but Mr. Siegelman fairly points out that the public also has a legitimate interest in OPR's investigation of conduct that led OPR to conclude that "some employees had exercised poor judgment with respect to discrete issues" in the Siegelman prosecution. (Doc. 15-2, p. 3). "The public is likely interested in assessing how and why the Department of Justice exercises its prosecutorial discretion—particularly in regard to high-profile public figures." *Citizens for Responsibility & Ethics in Washington v. United States Dep't of Justice*, 142 F. Supp. 3d 1, 7 (D.D.C. 2015) (quoting *Cotton*, 63 F.3d at 1120). Thus, Mr. Siegelman's pursuit of the ROI "'is likely to add to the fund of information that citizens may use in making vital political choices.'" 142 F. Supp. 3d at 7.

Because Mr. Siegelman has dual interests in the release of the ROI, some private and some public, this factor weighs neither strongly for nor strongly against a finding that Mr. Siegelman is entitled to fees.

*Reasonableness of Government's Justifications for Nondisclosure*

The final factor in determining a plaintiff's entitlement to attorneys' fees under FOIA is the reasonableness of the agency's withholdings. *McKinley*, 739 F.3d at 711. To determine the reasonableness of an agency's withholding, a court must consider whether the agency's opposition to disclosure "had a reasonable basis in law" and whether the agency was "recalcitrant in its opposition to a valid claim or otherwise engaged in obdurate behavior.'" *Davy*, 550 F.3d at 1162 (quoting *LaSalle Extension Univ. v. F.T.C.*, 627 F.2d 481, 486 (D.C. Cir. 1980)). The agency carries the burden of showing that it behaved reasonably. *Davy*, 550 F.3d at 1163.

As stated, "[a]lthough privileged portions of documents may be withheld, '[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection.' 5 U.S.C. § 552(b)." *Miccosukee Tribe*, 516 F.3d at 1257. It is on this point that OPR fails to meet its burden. OPR responded to Mr. Siegelman's FOIA request by informing him that it was withholding the ROI in its entirety pursuant to FOIA exemptions 5, 6, and 7(C). (Doc. 15-2, pp. 22-23) (citing 5 U.S.C. §§

18

522(b)(5), (6), (7)(c)).  OPR provided its response within one week.  At 157 pages, the ROI is relatively short, so OPR could have conducted a segregability analysis over the course of a few days, but there is no evidence of a segregability analysis. OIP's response to Mr. Siegelman's appeal took just under three months, allowing sufficient time for a segregability analysis, but again, there is no evidence that OIP made a segregability analysis.  (Doc. 15-2, pp. 32-33).  OPR did not do that work until the summary judgment stage of this litigation.

On July 26, 2016, OPR completed a segregability analysis and produced to Mr. Siegelman the ROI's title page and the two pages of the ROI that discuss OPR's analytical framework.  (Doc. 15-2, p. 17, ¶ 36).  In at least one other case, OPR has segregated and produced from a ROI the pages that contain OPR's analytical framework, *Engberg v. U.S. Dep't of Justice,* No. 8:19-cv-1775-T-23MAP, 2011 WL 4502079, at *2 (M.D. Fla. Aug. 12, 2011), *report and recommendation adopted*, No. 8:10-cv-1775-T-23MAP, 2011 WL 4501388 (M.D. Fla. Sept. 27, 2011).  OPR has not explained why it did not provide those pages to Mr. Siegelman when OPR first responded to his FOIA request.

*Engberg* provides an interesting comparison to this case.  There, the plaintiff, a journalist, sought an OPR ROI concerning OPR's investigation of the conduct of a former Assistant United States Attorney.  2011 WL 4502079, at *1. OPR denied the plaintiff's request for the ROI based on FOIA exemptions 3, 5, 6,

and 7(C).  2011 WL 4502079, at *1-2.  The district court determined that FOIA exemptions 5, 6, and 7(C) provided a basis for OPR to withhold the bulk of the information contained in the ROI and that segregation "would prove impossible" because the factual material in the ROI was closely intertwined with the deliberative material.  2011 WL 4502079, at *4-8.

In reaching a decision concerning OPR's obligation to make an effort to segregate information relating the conduct of the AUSA, the *Engberg* court balanced the difficulty in separating potentially non-exempt material from exempt material against the likelihood that the excised material would add to public knowledge, given the information that already had been published about the results of the investigation.  The *Engberg* court explained:

> Del Fuoco's privacy interest is outweighed by the public interest in disclosure.  When a government official's actions constitute a violation of the public trust, courts favor disclosure. *Cochran,* 770 F.2d at 956. That said, the difficulty here is parsing Del Fuoco's material from exemption-covered material. Such an exercise, from the perspective of my *in camera* review, would be difficult, if not impossible. In the end, disclosing the withheld information must serve the core purpose of the FOIA, *i.e.,* contributing substantially to public understanding of the operations or activities of the government. *News–Press,* 489 F.3d at 1191. I find it difficult to conclude that parsing Del Fuoco's information, assuming it were possible, would add to the public's understanding given the information already disclosed in the Shackelford Letter.  That document states the EOUSA "considered the role that is entrusted to an AUSA, the public trust that must be protected, and the prominence of the position of AUSA;" found "that the role of an AUSA is an extremely prominent position in which even non-supervisory AUSAs must play an important role to protect the integrity of the system and the public trust;" and

determined Del Fuoco had "substantially and negatively impacted [his] ability to perform at a satisfactory level in the USAO" and had "seriously undermined the trust of the USAO, and negatively impacted the reputation of the USAO in the law enforcement community" by his conduct as detailed therein (Shackelford Letter, pp. 10–11). In reaching this conclusion, the EOUSA relied on information pertaining to Del Fuoco contained in the ROI (*id.,* pp. 1–9). Given the infeasibility of segregating Del Fuoco's information contained in the ROI, the DOJ properly withheld that information under Exemption 6.

2011 WL 4502079 at *7.

In this case, the record indicates that until Mr. Siegelman pressed the issue by filing this lawsuit, OPR had disclosed nothing about its investigation. OPR prepared a letter summarizing its investigation, and DOJ provided the letter to the U.S. House of Representatives Committee on the Judiciary, but "DOJ has not disclosed the letter to any member of the public; nor has DOJ authorized the Committee to do so." (Doc. 15-2, p. 16, ¶ 36). "DOJ has never publicly disclosed, or authorized public disclosure of, the ROI or any portion of the ROI." (Doc. 15-2, p. 16, ¶ 36).[6] Under these circumstances, given the subject of the ROI, OPR should have conducted a segregability analysis in response to the June 2015 FOIA request and should have disclosed the reasonably segregable portions of the report – at a minimum the pages that OPR produced in July 2016. OPR's decision to withhold most of the ROI was reasonable and was based in the law (*see* Doc. 23),

---

[6] The U.S. House of Representatives Committee on the Judiciary issued a staff report concerning its investigation. (Doc. 15-2, p. 10, ¶ 22).

but it was not reasonable for OPR to delay a segregability analysis until after Mr. Siegelman filed his lawsuit.  If OPR did, in fact, conduct a segregability analysis before it filed its motion for summary judgment in this case, OPR has not proven that it did so.[7]  This factor tilts slightly in favor of a finding that Mr. Siegelman is entitled to an award of attorney fees.

The factors, in combination, demonstrate that Mr. Siegelman is entitled to an award of attorneys' fees.  The limited nature and qualitative value of the FOIA disclosure in this case will impact the size, not the entitlement to, an award of fees.

### C.  Reasonableness of Fee Award Mr. Siegelman's Requests

The Court may award an eligible and entitled plaintiff "reasonable attorney fees and other litigation costs."  5 U.S.C. § 552(a)(4)(E)(i).  Mr. Siegelman's attorneys seek fees of $72,420 and $400 in costs.  (Doc. 33, p. 15).  On the record in this case, the requested fees are excessive.

Although Mr. Siegelman's action prompted OPR to produce some information, Mr. Siegelman's effort to obtain the entire ROI based on his bad faith argument was not successful.  As the Court has stated, "persuasive authority from other courts suggests that allegations of agency bad faith require closer scrutiny of

---

[7] The record reflects that Mr. Siegelman initially made a FOIA request for the ROI in February of 2014.  OPR denied the request in November of 2014.  (Doc. 15-2, p. 22).  Given the months that elapsed between the request and the answer, it is conceivable that OPR conducted a segregability analysis in 2014.  If OPR did conduct a segregability analysis in 2014, that analysis might explain the absence of an early analysis with respect to Mr. Siegelman's 2015 FOIA request.  The record discloses little about the DOIA process in 2014.

the agency's reliance on FOIA exemptions, but mere allegations of bad faith do not unlock sealed reports." (Doc. 23, p. 9). And while the record indicates that OPR did not "ma[k]e a good faith effort to search out material and to pass on whether it should be disclosed" until the summary judgment stage of this litigation, *Cox*, 601 F.2d at 6, the record also demonstrates that much of the information in the ROI was subject to FOIA exemptions, leaving little substantive information eligible for production.

Under these circumstances, Mr. Siegelman is entitled to a modest award of fees and costs. The Court instructs the parties to confer and to try to agree on a modest payment of fees and costs. If the parties cannot agree, then Mr. Siegelman may filed an amended petition for fees and costs, consistent with the analysis in this opinion. If Mr. Siegelman files an amended fee petition, then the Court will set a deadline for OPR to respond to the updated petition.

## IV. CONCLUSION

For the reasons stated, the Court grants Mr. Siegelman's motion for an award of attorneys' fees and litigation costs. The parties shall proceed as directed.

**DONE** and **ORDERED** this April 8, 2019.

_Madeline H. Haikala_

**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE